221 So.2d 138 (1969)
SOLAR RESEARCH CORPORATION, a Foreign Corporation and Jack N. Holcomb, Individually, and Dorothy Jean Holcomb, Individually, Petitioners,
v.
Julius F. PARKER, Jr., As Executor of the Estate of Julius F. Parker, Leo L. Foster and John A. Madigan, Jr., a Partnership and Rivers Buford, Jr., Individually, Respondents.
No. 37546.
Supreme Court of Florida.
April 2, 1969.
*139 Jack N. Holcomb and Dorothy Jean Holcomb in pro. per.
Julius F. Parker, Jr., of Parker, Foster & Madigan, Gene D. Brown of Horne, Rhodes & Lamb, Tallahassee, for respondents.
DREW, Justice.
Pertinent facts and background in this litigation are set forth in the opinion of the District Court of Appeal, Third District.[1] We granted certiorari because of the holding in the decision that the trial court should have granted the motion for a judgment notwithstanding the verdict for the plaintiff attorneys because "the preponderance of the evidence was to the effect there were agreed fees"[2] and the holding of the District Court with reference to the power and authority of the trial court in "evaluating and assessing" attorneys fees.[3] These conclusions of the District Court conflict with many decisions of this Court.[4]
On the merits of the controversy, the ultimate judgment of the District Court must be approved. We separate this opinion into a discussion, first of the Buford Claim and second of the Foster Claim. Preliminarily, however, we deem it essential to briefly discuss a matter that seems to have led the trial court into error. It concerns the difference in the legal principles involved in attorneys fees awarded as costs and assessed against the party or parties in litigation, and attorneys fees earned by a lawyer and due him by his client for legal services rendered. It is the latter type of fees that are involved in this case. In consideration of the factors entering into the determination of the amount of the fee, however, the trial court seems to have applied the rule applicable to the allowance of fees of the former type. In his order denying *140 a judgment for plaintiff notwithstanding the verdict, the trial court said:
"The Court is of the view that this case is controlled by the oft-stated proposition of law that although the expert opinion evidence by qualified witnesses is admissible and may be strongly persuasive as to the value of an attorney's services, it is not binding on the court or jury. Baruch v. Giblin, Fla. 1935 [122 Fla. 59], 164 So. 831; Folmar v. Davis, Fla.App. 1959, 108 So.2d 772; Fekany v. S.R.D., Fla.App. 1959, 115 So.2d 418; Breithart [Breitbart] v. S.R.D., Fla.App. 1959, 116 So.2d 458; Lyle v. Lyle [Fla.App.], 167 So.2d 256. In Romy v. Dade County, Fla.App. 1959, 114 So.2d 181 [8], it was held error for the court to instruct the jury as to a definite amount to be awarded for attorney's fees unless such amount is stipulated. The above cases clearly hold that an expression by an expert of an opinion of the amount an attorney's fee should be is not binding on the jury, which may consider other evidence as to the nature of the services, time consumed in their performance, and other incidents and circumstances involved in arriving at the value of such services. It is true that a number of these cases are eminent domain proceedings which involved a statute providing for an attorney's fee `to be assessed by the jury.' However, the principles announced and applied are based largely upon those set forth in Baruch v. Giblin, Supra, which was a suit by the attorney against the client to recover fees for services rendered."
The cases governing the award of attorneys fees in condemnation proceedings,[5] divorce and related proceedings,[6] actions on insurance policies,[7] workmen's compensation,[8] probate proceedings[9] and similar cases involve altogether different principles from those involved in these proceedings. An extended discussion of this question in this case is neither justified nor required.[10]

THE BUFORD CLAIM
Count II of the Buford Complaint filed June 26, 1965, alleges:
"Plaintiff, for professional services rendered on behalf of the Defendants has sent Defendants his bill in the amount of $2,500.00 plus costs of $52.60, and although Defendants have admitted liability by letter dated November 20, 1964, which is attached hereto and made a part hereof by reference and marked Exhibit "A", they have neither paid this bill nor made any arrangements to pay same, and the said sums are due and owing to the Plaintiff, whereupon Plaintiff sues on an account stated of $2,552.60."
In support of this count Buford offered in evidence a letter from Holcomb dated November 20th, 1964, acknowledging receipt of Buford's bill for $2,500.00 for services and concluding with the following paragraph:
"As I stated some time ago, the payment of your fee would be very difficult without generating some cash from the Plantation. As it so happens, I do have some cash coming in by approximately the first week in December, and will be able to pay your bill in its entirety. I cannot affix a definite date because it could be a little sooner than I anticipate, or it could take a little longer."
*141 The defendant Holcomb testified he wrote the letter. He offered no testimony to contradict the amount of the fee due Buford. In such circumstances Buford was clearly entitled to a directed verdict.

THE FOSTER CLAIM
A summary judgment was granted plaintiff attorneys on the issue of liability for attorneys fees. The only issue to be submitted to the jury is succinctly stated in the pretrial order as follows:
"There is a genuine issue as to the terms of the oral contract relating to the amount of compensation to be paid. The plaintiffs contend that the amount to be paid was a fixed sum, namely, $5,000.00 for the services of Leo Foster and $2,500.00 for the services of Rivers Buford, Jr. and that such sum would be payable at the termination of the litigation regardless of the outcome. The defendants contend that the compensation to be paid was a reasonable sum not to exceed $5,000.00 and $2,500.00 respectively and to be based upon the extent of the services performed in contemplation of extensive preparation and participation in the trial court and also with regard to an anticipated appeal. It thus appears to the Court that there is an issue as to what the terms of the contract with regard to compensation were, and if in accordance with the defendants' contentions, the amount the defendants are obligated to pay."
The evidence on this question by both parties establishes a contract to pay a fee of $5,000.00 "win, lose, or draw." The quoted language was used by Foster in his discussion of fees and the defendant Holcomb repeatedly confirmed the use of such a phrase. Holcomb's contention as to his understanding of the contract is summarized in the following answer given to the last question propounded to him:
"I agreed to a fee of Five Thousand Dollars and one not to exceed Five Thousand Dollars, and I agreed to that predicated upon these things, not to exceed, and I would expect a reasonable fee if the things were not done."
The fact that the case was disposed of in a manner that was a complete victory for Holcomb without Foster and Buford having to perform all the services they contemplated having to render was not only favorable to the client but a break for the attorneys. What effect the standing reputation and ability of counsel had in the ultimate victory is, of course, impossible to measure. Such is universally recognized, however, as a factor in determining the reasonableness of professional fees. Moreover, had the case involved all the services contemplated and more, the attorneys, under the contract, would have been limited to the amount agreed on.
There is another  and more basic  reason why the attorneys were entitled to recover here as a matter of law. Under the pleadings and the pre-trial order the burden was on Holcomb to prove not only that he had no contract for a fixed fee but that the reasonable value of the services performed by Foster for Holcomb was less than that charged. There is no evidence in the record to support that claim. This seems to have been recognized by the trial judge at the conclusion of the evidence when he said  in a colloquy with counsel out of the jury's presence:
"MR. HOLCOMB: Your Honor, there was a case that holds that if an attorney goes in and asks for a certain amount and does not put any testimony on as to the reasonableness of the fee, that they have waived the right of putting anything on then as to what is a reasonable fee and that the jury can find anything that is a matter of fact in the absence of the evidence.
"THE COURT: What could this jury or this judge do if it was up to the judge? What is there to determine what is a reasonable fee in this case, getting down to dollars and cents?

*142 "MR. HOLCOMB: I think it would be predicated upon what they would feel reasonable if they went to an attorney under the same circumstances, how much they feel would be reasonable to charge and things of this nature.
"THE COURT: They're not experts on that.
"MR. HOLCOMB: They're not experts on it, but it is a question of fact as to what is or is not reasonable. Whether they're experts on it is beside the point.
"THE COURT: I think it may have been incumbent on you to have shown some evidence that it was worth less than $5,000 or $2,500. You say it is unreasonable, but what would be reasonable?
"MR. HOLCOMB: I think an amount considerably less than $7,500 would be reasonable.
"THE COURT: I know, but what?
"MR. HOLCOMB: Again, the only thing I have to go on is the cases that say that reasonable attorney's fees are facts for the jury.
"THE COURT: I know, but you've got to give some evidence to the jury to base that on.
"MR. HOLCOMB: I don't know how I could get an attorney to come up and testify as to the reasonableness of it.
"THE COURT: I don't want you to misunderstand me at all. It may be that after I have reflected on this that I may conclude that they're entitled to what they're asking for now, but I'm going to withhold that and submit it to a jury, but there is a question in my mind as to what it is they could consider.
"MR. HOLCOMB: There is a case on this subject and I think the case held that it was incumbent on attorneys asking for fees to show what is reasonable by expert testimony.
"THE COURT: That is where there is no agreement. I'm going to submit it to the jury and see what they come up with, but I don't want anybody to be misled. It could be that after I have considered , I'm not saying whether there is or isn't, but there is some doubt in my mind as to whether the motion is well taken at this time."
Most of the cases referred to in the trial court's order denying judgment notwithstanding the verdict, supra, fall within the category of cases heretofor alluded to concerning fees as costs in legal proceedings.[11] Baruch v. Giblin[12] was a suit like this and the statement in that opinion as to opinion evidence must be considered in the light of the facts in that case. The record there shows that many witnesses testified as to the value of the services rendered by Giblin to Baruch. The opinion evidence varied from $1,000 to $15,000. The fee awarded was $6,250.00, well within the range of the evidence. In Folmar v. Davis,[13] referred to by the trial judge, there was opinion evidence above and below the amount awarded. In Lyle v. Lyle[14] the late Judge Sturgis speaking for the court reversed an award for attorney fees in a divorce case but made the following comments concerning attorneys fees generally.[15]
"As between a lawyer and his client the matter of the fee is one of contract between the two, but a fee to be allowed by the court is something else and must be proved as any other fact, and determined and allowed by the court in its judicial discretion. The reasonableness *143 of the attorney's fee is not the subject of judicial notice, neither is it to be left to local custom, conjecture or guesswork. Each award must be made on its own merits and should be justified by the circumstances in each particular case."
Most of the other cases, as recognized by the trial judge, fall within the category of costs and the rule there is not applicable here.
It is pertinent to re-emphasize the fact that the law governing the recovery of attorneys fees in suits of this nature is exactly the same as any other professional fee. Judge Sturgis in the Lyle case, supra, summed up the situation here when he said:[16]
"In all litigation involving professional fees proof is required of the nature of and the necessity for, the services rendered, and the reasonableness of the charge made therefore. In this respect the legal profession stands on the same plane with other professions."
The decision of the District Court, as modified, is approved.
ERVIN, C.J., and ROBERTS, CARLTON and ADKINS, JJ., concur.
NOTES
[1] Parker v. Solar Research Corporation. 210 So.2d 271 (1st Dist.Ct.App.Fla. 1968).
[2] The language used in the opinion is:

"We also further find that the trial court further erred in not granting the motions for judgment notwithstanding the verdict. The preponderance of the evidence was to the effect that there were agreed fees. There was sufficient admissions, by the appellee Holcomb of the discussion and agreement of the amounts of the fees to offset any very weak contention that said fees were to be paid only if certain things had to be done." Id. at 274.
[3] The exact language used to which we refer is:

"The work-knowledge of an attorney is a very technical matter and its value to a client can, in most instances, be more properly evaluated and assessed by a court, who has had personal experiences in these matters, than by a lay man jury. Therefore, the trial court is in a better position to act upon the reasonableness of the evidence and accredit the proper preponderance thereof and in the case sub judice, we think he should have and in so doing, have granted the motions for directed verdict, or certainly the motions for judgment notwithstanding the verdict. By adopting this opinion, we do not feel that we are substituting our judgment for that of a jury, but we are substituting our judgment for that of the trial court." Id.
[4] The holding that a trial court should grant a motion for a judgment notwithstanding the verdict where "the preponderance of the evidence" supported the wrong party, is clearly erroneous. "A case should not be taken from the jury, unless the conclusion follows from the evidence, as matter of law, that no recovery can be lawfully had upon any view taken of facts that the evidence tends to establish." (e.s.) Jacksonville Terminal Co. v. Smith, 67 Fla. 10, 64 So. 354 (1914); Wager v. East Coast Hospital Assn., 105 Fla. 547, 141 So. 743 (1932). Also see 32 Fla.Jur. Trial, § 85 et seq. (1960) and the myriad of cases there cited upholding this elemental proposition.

As to the language quoted in footnote 3, the views expressed by the District Court are wholly unnecessary to its ultimate judgment and may be considered obiter. See Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla. 1960). In the interest of uniformity in the law and the avoidance of confusion in the decisions on the general subject treated, such language is disapproved.
[5] Fla. Stat. §§ 73.091, 73.131 (1967), F.S.A.
[6] Fla. Stat. §§ 61.071, 61.16 (1967), F.S.A.
[7] Fla. Stat. § 627.0127 (1967), F.S.A.
[8] Fla. Stat. § 440.34 (1967), F.S.A.
[9] Fla. Stat. §§ 734.01, 737.22, 733.20 (1967), F.S.A.
[10] Compare, however, Dade County v. Renedo, 147 So.2d 313, 1 A.L.R.3d 1391 (Fla. 1962), where this Court held that when there is conflicting opinion evidence as to value in eminent domain proceedings the jury's award must be not less than the lowest nor more than the highest figure.
[11] See footnotes 6 to 9, supra.
[12] 122 Fla. 59, 164 So. 831 (1935).
[13] 108 So.2d 772 (3d Dist.Ct.App.Fla. 1959).
[14] 167 So.2d 256 (2d Dist.Ct.App.Fla. 1964).
[15] Id. at 257.
[16] Id.