976 So.2d 97 (2008)
John BURLEY, Appellant,
v.
GELCO CORPORATION, d/b/a G.E. Capital, etc., Appellee.
No. 5D06-1995.
District Court of Appeal of Florida, Fifth District.
February 29, 2008.
James N. Charles, Celebration, for Appellant.
*99 Leo Benitez of Benitez & Associates, Coral Gables, for Appellee.
SAWAYA, J.
The issue we must resolve is whether summary final judgment rendered in an action for replevin and breach of vehicle lease agreement is appropriate when material issues of fact exist as to whether the sale of the repossessed vehicles was commercially reasonable as required by Article 9 of the Uniform Commercial Code (U.C.C.). Based on the facts and circumstances of the instant case, we reverse the summary final judgment and remand for further proceedings.
Gelco Corporation filed the above referenced action after Mr. Rooter of Central Florida, Inc. and its president, John Burley, defaulted on a vehicle lease agreement under which Mr. Rooter agreed to lease three vehicles owned by Gelco. Mr. Burley also signed a personal guaranty of the payments. The court ordered that Mr. Rooter and Mr. Burley surrender the vehicles upon the posting of a bond by Gelco. An Agreed Order Granting Partial Summary Judgment as to Count I (Replevin) was entered. The vehicles were turned over to Gelco, which subsequently moved for final summary judgment as to damages. In its motion, Gelco alleged that after it recovered the three vehicles, Gelco disposed of them "in a commercially reasonable manner," obtaining $44,180 from the auction sale and leaving a balance of $55,928.80 due under the lease.[1]
Mr. Burley filed an affidavit in opposition to Gelco's motion, stating, inter alia, that he was entitled to receive notice of the disposition of the vehicles prior to their sale pursuant to section 679.611, Florida Statutes, but had not been provided with that notice. Had he received the required notice, Mr. Burley would have either objected to the proposed sale or gone to the sale and purchased the vehicles himself because their sale price was less than one-third of the market price. He stated that a commercially reasonable sale would have resulted in a sale of the vehicles for over $40,000 each.
Mr. Burley argued below that his affidavit raised a question of fact whether the sale of the vehicles was commercially reasonable, thus preventing entry of summary final judgment. If the sale was commercially unreasonable, an evidentiary hearing was required in order for Gelco to establish that the fair market value of the vehicles was less than the debt. Nevertheless, the court entered final summary judgment in favor of Gelco, finding that there were no genuine issues of material fact as follows:
f. [Gelco]'s notice of the proposed sale of the Three Vehicles to JOHN BURLEY was insufficient as it did not indicate the specific date, time and place of the sale.
g. Nevertheless, [Gelco] met its burden of proof and established that it disposed of the Three Vehicles in a commercially reasonable manner.
The court awarded Gelco $2,000 in attorney's fees and $357.75 in costs in addition to the deficit of $55,928.80.
Mr. Burley's argument is simple: he asserts that Gelco's failure to provide him with the notice required by section 679.611, Florida Statutes, raised a presumption that the sale of the vehicles was conducted in a commercially unreasonable *100 manner.[2] Therefore, Mr. Burley contends, the trial court erred in proceeding further and finding that Gelco had met its burden of rebutting the presumption because such a determination requires an evidentiary hearing and could not be determined by summary judgment. We believe Mr. Burley is correct.
Article 9 of the U.C.C., codified in chapter 679, Florida Statutes, provides that when the debtor defaults, the secured party can take possession of the secured collateral and can "sell, lease, license, or otherwise dispose of any or all of the collateral. . . ." § 679.610(1), Fla. Stat. (2005). However, the secured party's sale of the collateral must be made in a "commercially reasonable" manner. § 679.610(2), Fla. Stat. (2005). In fact, "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." Id. The purpose of these rules is, in part, "to protect the debtor, because they help prevent the creditor from acquiring the collateral at less than its true value or unfairly understating its value so as to obtain an excessive deficiency judgment." Allen v. Coates, 661 So.2d 879, 884 (Fla. 1st DCA 1995). If a debtor places the creditor's compliance with the U.C.C. requirements in issue, it becomes the creditor's "burden of establishing that the collection, enforcement, disposition, or acceptance was conducted in accordance with this part." § 679.626(2), Fla. Stat. (2005).
Mr. Burley obviously placed Gelco's compliance at issue; he argued successfully below that Gelco's notice was inadequate. Section 679.611, formerly section 679.504, provides that unless the collateral "is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market," the secured party disposing of the collateral "shall send to the persons specified in subsection (3) a reasonable authenticated notification of disposition." § 679.611(2), (4), Fla. Stat. (2005). Section 679.613 prescribes the contents and form of the notification for non-consumer goods (such as the business vehicles at issue in this case). Specifically, section 679.613(1)(e) requires that the notice of disposition must include the "time and place of a public disposition or the time after which any other disposition is to be made." The importance of correct notice cannot be overstated. "Notice is an integral aspect of whether the disposition is `commercially reasonable' under chapter 679." Landmark First Nat'l Bank of Fort Lauderdale v. Gepetto's Tale O' The Whale of Fort Lauderdale, Inc., 498 So.2d 920, 922 (Fla.1986). Whether the notice was adequate is a question of fact. See § 679.613(2), Fla. Stat (2005).
Not only did the trial court find that the notice was insufficient, but also it went further and addressed whether the sale was conducted in a commercially reasonable manner in accordance with sections 679.627(1) and (2), Florida Statutes. Once a debtor shows that the creditor gave insufficient notice, a presumption arises that the subsequent sale of the collateral was commercially unreasonable, see Gangelhoff v. Transamerica Commercial Fin. Corp., 611 So.2d 1333, 1334 (Fla. 2d DCA 1993); CSI Servs., Ltd. v. Hawkins Concrete Constr. Co., 516 So.2d 337 (Fla. 1st DCA 1987), thus rendering the question of commercial reasonableness a fact issue.
Here, the sole evidence of commercial reasonableness before the trial court *101 was an affidavit by Mr. Hanson submitted by Gelco. In it, Mr. Hanson explains that the vehicles were delivered to an auction service that "sells vehicles for and on behalf of [Gelco] one day per week (usually on Tuesdays), which is known in the industry" and that "prior to the scheduled sale dates, the Auction allows any and all licensed motor vehicle dealerships to inspect the vehicles on its lots on a regular basis." This statement merely explains what usually occurs; it provides no facts from which it could be determined that the vehicles were disposed of "in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." § 679.627(2)(c), Fla. Stat. (2005).[3] Accordingly, this affidavit was insufficient to establish a prima facie showing that Gelco disposed of the vehicles in conformity with reasonable commercial practices. Moreover, there is no evidence that Mr. Hanson would have such knowledge or was otherwise qualified to give information on the resale practices of the auction industry. Florida Rule of Civil Procedure 1.510(e) requires that affidavits supporting and opposing motions for summary judgment be made on personal knowledge, state admissible facts, and affirmatively show that the affiant is competent to testify as to the matters being related in the affidavit. Mr. Hanson's affidavit does not meet this test. Neither did Gelco produce an affidavit of any expert or other evidence regarding the commercial propriety of the sale of the three vehicles.
We conclude that Mr. Burley's affidavit in opposition to the motion for summary judgment was sufficient to raise the question of whether the sale was commercially reasonable under the statute  Gelco's failure to give Mr. Burley the requisite notice raises a presumption that the sale was commercially unreasonable. See CSI Servs., Ltd., 516 So.2d at 338 (concluding that according to applicable case law, the "failure to give the requisite notice merely raises the rebuttable presumption that since the sale was commercially unreasonable, the secured party is not entitled to a deficiency judgment. However, if the secured party can overcome that presumption by showing that fair market value was obtained for the collateral and the value received was less than the debt, and if no other defenses are asserted and proven, the secured party is entitled to a deficiency judgment"). Only if Gelco can overcome the presumption that the fair market value of the collateral at the time of repossession was equal to the total secured debt would Gelco be entitled to a deficiency judgment. Weiner v. Am. Petrofina Mktg., Inc., 482 So.2d 1362 (Fla.1986).[4] Thus, genuine issues *102 of material fact surround the commercial reasonableness of the sale, making summary judgment improper.
REVERSED and REMANDED.
MONACO and LAWSON, JJ., concur.
NOTES
[1] The lease agreement called for payments of $555.67 per month per vehicle for a period of 60 months; Mr. Rooter and Mr. Burley stopped making payments less than a year after entering into the agreement.
[2] Mr. Burley could properly seek the protections afforded by the U.C.C. because a guarantor is a debtor for Article 9 purposes. Tropical Jewelers, Inc. v. Nationsbank, N.A. (South), 781 So.2d 392, 394 (Fla. 3d DCA 2000).
[3] As previously indicated, sections 679.627(1) and (2), Florida Statutes, control the determination of whether disposition of collateral is made in a reasonable commercial manner. Specifically, the concept of "recognized markets," as used in sections 679.627(2)(a) and (2)(b), is "quite limited" and applies "only to markets in which there are standardized price quotations for property that is essentially fungible, such as stock exchanges." U.C.C. § 9-627 cmt. 4 (2002). Therefore, only subsection (2)(c) is applicable here.
[4] In Weiner, the court adopted the rule set forth in Norton v. National Bank of Commerce, 240 Ark. 143, 398 S.W.2d 538 (1966), that

when it has been determined that a secured party has disposed of collateral in a commercially unreasonable manner, there will arise a presumption that the fair market value of the collateral at the time of repossession was equal to the amount of the total debt that it secured. The burden to prove that the fair market value of the collateral was less than the debt will be upon the secured party. If the secured party meets this burden, he will be allowed to recover a deficiency judgment in an amount equal to the total debt minus the fair market value of the collateral as ultimately determined.
Weiner, 482 So.2d at 1365.