LAGOA, J.
 

 Bernard Winkler, Lynn J. Winkler, Bernardo J. Del Riesgo, Vivian Del Riesgo, Jaime L. Ortiz and Carmen A. Gallo (collectively “appellants”) appeal a final declaratory judgment finding that the appel-lee, Lawyers Title Insurance Corporation (“Lawyers Title”), was not liable under section 627.792, Florida Statutes (2009), for the alleged misappropriation of the appellants’ escrow deposits by Coastal Title Services, Inc. (“Coastal”). Because substantial record evidence supports the trial court’s findings that Coastal was not the designated title agent for any of the appellants’ transactions and that the appellants’ escrow deposits did not constitute funds held in trust pursuant to section 626.8473, Florida Statutes (2009), we affirm.
 

 I.
 
 FACTUAL AND PROCEDURAL HISTORY
 

 Coastal was a licensed title insurance agency authorized to issue title insurance commitments, policies and endorsements as an agent for, and on behalf of, Lawyers Title. The principal of Coastal was Ira Hatch, a Florida attorney who has since been disbarred. Hatch was also a “manager” of Lake Buena Vista Vacation Resort LC (the “developer”), which was the developer of the San Marco Resort Condominium Project (the “project”) in Orlando, Florida.
 

 In the fall of 2004 and spring of 2005, the appellants entered into separate Reservation Agreements with the developer. Pursuant to the terms of the Reservation Agreements, each couple paid a $15,000
 
 *416
 
 deposit to Coastal, as escrow agent, to reserve a condominium unit at the project. Subsequently, in the fall of 2006, the appellants executed Purchase Agreements for their respective condominium units, and made initial contract deposits payable to Coastal as escrow agent. The project had an anticipated completion date of April 2009. However, construction never began, and the developer eventually terminated the project. Neither the developer nor Coastal returned the escrow deposits to the appellants. The appellants then sought reimbursement for their escrow deposits from Lawyers Title pursuant to section 627.792, which imposes liability upon a title insurer for the defalcation of funds by their licensed title agents if the funds are held in trust pursuant to section 626.8473. Section 627.792, provides as follows:
 

 A title insurer is liable for the defalcation, conversion, or misappropriation by a licensed title insurance agent or agency of funds held in trust by the agent or agency pursuant to s. 626.8473. If the agent or agency is an agent or agency for two or more title insurers, any liability shall be borne by the title insurer upon which a title insurance commitment or policy was issued prior to the illegal act. If no commitment or policy was issued, each title insurer represented by the agent or agency at the time of the illegal act shares in the liability in the same proportion that the premium remitted to it by the agent or agency during the 1-year period before the illegal act bears to the total premium remitted to all title insurers by the agent or agency during the same time period.
 

 (emphasis added). Section 626.8473, in turn, provides in relevant part as follows:
 

 (1) A title insurance agent may engage in business as an escrow agent as to funds received from others to be subsequently disbursed by the title insurance agent in connection with real estate closing transactions involving the issuance of title insurance binders, commitments, policies of title insurance, or guarantees of title, provided that a licensed and appointed title insurance agent complies with the requirements of s. 626.8417, including such requirements added after the initial licensure of the agent.
 

 (2) All funds received by a title insurance agent as described in subsection (1) shall be trust funds received in a fiduciary capacity by the title insurance agent and shall be the property of the person or persons entitled thereto.
 

 (emphasis added).
 

 Lawyers Title filed a complaint seeking a declaratory judgment that it was not liable under section 627.792 for Coastal’s alleged misappropriation of the appellants’ escrow deposits. The appellants counterclaimed for a declaratory judgment that Lawyers Title was liable under the statute. The matter proceeded to a non-jury trial.
 

 Lawyers Title argued below that the escrow deposits that Coastal received from the appellants were not trust funds as defined by subsection 626.8473(1) because Coastal was never designated the closing agent for the appellants’ transactions, and the deposits were received in Coastal’s limited capacity as escrow agent and not in connection with a real estate closing transaction involving the issuance of a title commitment or policy. The appellants, on the other hand, argued that Coastal was the closing agent because of various oral representations made by the developer and Coastal and thus the escrow deposits were trust funds as defined by subsection 626.8473(1). The appellants also asserted that subsection 626.8473(1) permits a title agent to receive escrow deposits as an
 
 *417
 
 escrow agent
 
 only
 
 when those deposits are contemplated to be used at closing for the issuance of title.
 

 The trial court found that Coastal was never designated as the title issuing agent for any of the appellants’ transactions. As a result, “[bjecause Coastal Title had not been designated as the title issuing agent in these transactions, these deposits did not constitute funds held in trust pursuant to section 626.8473, Florida Statutes. Therefore, section 627.792, Florida Statutes does not apply to these deposits, and Lawyers Title is not liable to replace them.” This appeal ensued.
 

 II.
 
 ANALYSIS
 

 In a non-jury trial, the court’s findings of fact come to the appellate court with a presumption of correctness, and those findings will not be disturbed unless the appellant can show that they are clearly erroneous.
 
 Tropical Jewelers Inc. v. Bank of Am., N.A.,
 
 19 So.3d 424, 426 (Fla. 3d DCA 2009);
 
 Universal Beverages Holdings, Inc. v. Merkin,
 
 902 So.2d 288, 290 (Fla. 3d DCA 2005). A factual finding made by a court in a non-jury trial is clearly erroneous only when there is no substantial evidence to sustain it, it is clearly against the weight of the evidence, or it was induced by an erroneous view of the law.
 
 In re Donner’s Estate,
 
 364 So.2d 742, 748 (Fla. 3d DCA 1978);
 
 Oceanic Int’l Corp. v. Lantana Boatyard,
 
 402 So.2d 507, 511 (Fla. 4th DCA 1981). In addition, “it is for the trial court who heard the testimony below, not this [appellate] court, to evaluate and weigh the credibility of witness testimony and other evidence adduced at trial. So long as there is sufficient evidence in the record to support the trial court’s findings, [the appellate court is] required to affirm the final judgment. ...”
 
 Adkins v. Adkins,
 
 650 So.2d 61, 62 (Fla. 3d DCA 1994);
 
 see also Hillier v. City of Plantation,
 
 935 So.2d 105, 107 (Fla. 4th DCA 2006).
 

 As the Supreme Court explained in
 
 Hechtman v. Nations Title Insurance of New York,
 
 840 So.2d 993, 996 (Fla.2003), section 627.792 does not protect the public from a title insurance agent who misappropriates
 
 any
 
 funds from a trust account, but rather, “limits a title insurer’s liability for defalcation of funds by its agents to those ‘funds held in trust by the agent pursuant to § 626.8473.’” Subsection 626.8473(1) defines those funds as only those received by a title insurance agent “from others to be subsequently disbursed by the title insurance agent in connection with real estate closing transactions involving the issuance of title insurance binders, commitments, policies of title insurance, or guarantees of title.”
 

 Here, there was sufficient evidence from which the trial court could find that the funds were not held by Coastal pursuant to section 626.8473. All of the relevant documents referred to Coastal only as the “escrow agent,” and not as the “closing agent” or “title agent.” For example, the Reservation Agreement specifically identifies Coastal as the “escrow agent,” and provides that the reservation deposits are being held by Coastal under section 718.502(2)(c), Florida Statutes, part of the Condominium Act. The Purchase Agreement also identified Coastal as the “escrow agent,” and stated that Coastal would hold the appellants’ deposits, “in accordance with the escrow agreement contained in the Condominium Documents.”
 

 The appellants received the Condominium Documents, which included the referenced escrow agreement between Coastal and the developer. The escrow agreement between Coastal and the developer designated Coastal as the escrow agent to hold all deposits received from prospective purchasers of condominium units in the pro
 
 *418
 
 ject. The escrow agreement also specified that Coastal would be serving as escrow agent in accordance with section 718.202, Florida Statutes.
 

 None of the relevant documents identified a closing agent for the appellants’ transactions. In fact, Paragraph 10 of the Purchase Agreement gave the buyer the option of obtaining a title insurance commitment and policy from his or her own sources, or electing to have “Seller’s closing agent” issue the commitment and policy:
 

 Notwithstanding that Buyer is obligated to pay “all-cash” hereunder, in the event that Buyer obtains a loan for any portion of the Purchase Price, Buyer shall have the right to obtain a title insurance commitment and policy for the Unit from its own sources rather than to receive same from Seller, or Buyer may elect to have Seller’s closing agent issue the title insurance commitment and policy, in accordance with terms set forth in Section 11 below.
 

 All parties agree that no orders for title commitments or policies were ever placed. Indeed, none of the parties were contemplating closing, and the appellants had not even decided whether to obtain financing for the purchase of the units. The appellants testified below that the developer and Coastal told them that Coastal would act as the closing agent. Apart from the fact that the trial court, as the trier of fact, rejected this testimony, see
 
 Adkins,
 
 650 So.2d at 62, pursuant to Paragraph 10 of the Purchase Agreement, the developer did not have the unilateral authority to designate the closing agent. Moreover, any oral representations by the developer concerning the status of Coastal were disavowed by the integration clause contained in the Purchase Agreement, which read as follows:
 

 ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER TO A BUYER OR LESSEE.
 

 All of the relevant documents designated Coastal as the “escrow agent,” and established that the escrow deposits were received by Coastal in its limited capacity as escrow agent for the developer pursuant to the escrow agreement, and in accordance with the relevant sections of the Condominium Act. The appellants’ escrow deposits were not received in connection with a transaction involving the issuance of title insurance binders, commitments, policies of title insurance, or guarantees of title. Accordingly, there is ample support in the record for the trial court’s finding that Coastal was not the designated title agent of any of the appellants’ transactions, and that the appellants’ escrow deposits did not constitute funds held in trust pursuant to section 626.8473.
 

 We therefore affirm the final declaratory judgment in favor of Lawyers Title.
 

 Affirmed.